This is a suit under Act No. 20 of 1914, as amended, brought by plaintiff, James Zito, in which he seeks to recover workman's compensation at the maximum rate for 400 weeks, together with $250 medical expenses, from Eagle Asbestos 
Packing Company, Inc., his former employer, and its liability insurance carrier, American Mutual Liability Insurance Company. The petition alleges that plaintiff was totally and permanently disabled as a result of injuries received in an accident which occurred on August 31, 1943, while he was in the employ of Eagle Asbestos Packing Company, Inc., and that by reason of the injuries he is unable to perform work of any reasonable character.
The defendants denied that plaintiff suffered any disabling injuries in the accident. They allege that plaintiff has been paid compensation totalling $521.20 and that there is no liability on their part beyond *Page 278 
that amount, and they claim due credit for said payments against any judgment which might be awarded to plaintiff.
Zito testified that on the date alleged he was standing on a ladder applying insulation to the ice water lines in a vessel under construction at the Delta Shipyards in New Orleans, when a fellow workman passed by dragging a cable which caught the bottom of the ladder throwing it over and causing Zito to fall to the floor, the lower part of his back striking the edge of a work bench which stood near the ladder. There is no dispute that plaintiff was in the employ of Eagle Asbestos Packing Company, Inc., at the time of the accident and that his duties were hazardous and came within the purview of the Workmen's Compensation Act.
The lower court found that plaintiff was totally and permanently disabled by reason of his injuries sustained in the accident, and awarded him compensation at the weekly rate of $20 for a period not exceeding 400 weeks, subject to a credit of $953.33, plus $250 for medical expenses. The defendants have appealed from the judgment and plaintiff has answered the appeal praying that the judgment be amended to the extent of reducing the amount of the credit allowed defendants to the sum of $521.20.
This case involves only a question of fact and the only issue to be determined is whether Zito's injuries rendered him totally and permanently disabled. Defendants' counsel argue with vigor that plaintiff has failed to make out his case with that certainty required by law.
Almost immediately after the accident Zito returned to his job, and he worked through December 7, 1943. He testified that during this period he experienced constant and severe pain in his lower back, and that he could work but irregularly, averaging about three and one-half days time per week. On December 8, 1943, plaintiff complained that he could no longer fulfill his duties and was sent by his employer to the office of Dr. J.T. Scott, Jr., one of the physicians for the defendant American Mutual Liability Insurance Company. It appears that Dr. Scott did not personally handle plaintiff's case and whatever treatment plaintiff received was administered by Dr. DiLeo, who is an assistant of Dr. Scott. Acting upon the instructions of Dr. DiLeo, plaintiff remained away from his job and on February 22, 1944, Dr. DiLeo discharged him, instructing him, however, to report to Dr. Scott's office from time to time for further treatment. Zito, on March 1, 1944, returned to his employer and worked to August 1, 1944. During this period the lightest duties available were assigned to him and the record shows that instead of installing cork insulation, as he had been doing prior to the accident, he was given the task of sewing canvas.
Zito reported to Dr. Scott's office regularly; on July 28, 1944, he was informed that he had fully recovered and needed no further treatment. On August 1, 1944, the employment of plaintiff with Eagle Asbestos Packing Company, Inc., was terminated. Plaintiff asserts that he quit because he continued to suffer pains in his back and could no longer perform his duties properly; that it was necessary to seek medical attention from his own physician and that he later placed himself in the charge of Dr. E.H. Maurer.
Four medical experts testified in the case. Dr. George C. Battalora, an orthopedic surgeon, appeared as a witness for defendants and testified that he made three examinations of plaintiff, the first on June 12, 1944, at which time he concluded that Zito's complaints were compatible with a posterior lumbo-sacral strain, his opinion being that such condition was not disabling and should not have hindered plaintiff in performing his work. Another examination was made by Dr. Battalora on August 7, 1944, and the doctor testified that plaintiff was grossly exaggerating his condition and that he thought the supporting belt which Zito was wearing at the time should have been sufficient to give him some relief. Dr. Battalora last saw plaintiff on January 23, 1945, and he testified that the X-rays then taken were negative for bone or joint injuries, but that they did show some very slight hypertrophic changes in the fourth lumbar body. *Page 279 
Dr. Scott testified as a witness for defendants, but his testimony is not in any way helpful in arriving at a conclusion herein, as he stated that he made no examination of Zito and that whatever treatments plaintiff obtained in his office were given by Dr. DiLeo, and that the latter would be in a better position to testify respecting Zito's condition.
However, Dr. DiLeo, called as a witness for defendants, testified that he was a general surgeon and not an orthopedic specialist, and that he, therefore, did not consider himself competent to express an opinion as to plaintiff's condition. Dr. DiLeo also frankly admitted that he had never made a complete examination of plaintiff.
Zito's only medical witness was Dr. E.H. Maurer, who first saw him on October 27, 1944. This physician stated that he found that plaintiff was suffering with periarticular arthritis as a result of a direct trauma. Since the above date Dr. Maurer has been attending plaintiff regularly; in the beginning Zito visited him semi-weekly and for the next few months plaintiff's visits to his office were made weekly. Dr. Maurer testified that on the date of the trial plaintiff was still under his care and that it was his conclusion that plaintiff was unable to undertake manual labor as a result of the injuries which existed in his back, and that he was totally and permanently incapable of carrying out duties similar to those in which he was engaged at the time of the accident.
[1] Defendants' counsel point to Dr. Battalora's testimony and argue that Zito is a malingerer and is not entitled to anyfurther compensation. The testimony shows that plaintiff was 37 years of age at the time of the trial in the lower court; that he has always been an active man and has earned a substantial wage. For three years prior to the accident he was in the employ of the Eagle Asbestos Packing Company, Inc., and his record with that concern seems to be creditable. Zito likewise had a satisfactory employment record with his previous employer, in whose employ he was for about eight years. Plaintiff has not worked since August 1, 1944, and the testimony shows that it was incumbent upon Mrs. Zito to obtain employment in order to sustain the plaintiff and their children. At no time prior to said date was it necessary for her to work, as Zito had always been capable of earning a good living and providing for his family. Considering the record as a whole, we are convinced that plaintiff is sincere in his claim that he is disabled, and there is nothing whatever which would indicate to our minds that he is malingering. Dr. Battalora only saw plaintiff on three occasions; Dr. Scott admits that he did not examine or treat plaintiff; and Dr. DiLeo testified that he is not skilled in orthopedics and that he never made a complete examination of plaintiff. On the other hand, Dr. Maurer, who had been treating Zito steadily from October 27, 1944, to the date of the trial in the lower court, testified that he saw little or no improvement in plaintiff's condition and that he was giving plaintiff procaine injections in order to alleviate his pains. Plaintiff's occupation requires much bending, twisting, crawling, reaching, etc., and Dr. Maurer is positive that Zito cannot perform the duties which his occupation would require as he would experience pain due to his condition. The Supreme Court held in the case of Stieffel v. Valentine Sugars, Inc., et al., 188 La. 1091,179 So. 6, 15, that although an injured workman is able to perform his duties he would nevertheless be classed as disabled, if the physical activity caused him to suffer pain. The court said: " 'In addition, it is satisfactorily shown that he is unequal to anything like reasonably constant physical activity in and about an office itself, where he is required to pass from room to room, handle chairs, typewriters, adding machines and their stands and supervise files that require frequent stooping and moving about, "sitting down" for long periods and arising from a sitting to an erect position, all of which either provokes, or is accompanied by, more or less pain and discomfort, and has frequently to be followed by ameliorative treatment. "Competency," accompanied by active pain, amounts to disability.' "
[2] In view of the considerable period of time during which Dr. Maurer has treated plaintiff and the many opportunities he *Page 280 
has had of observing him, we are of the opinion that Dr. Maurer's testimony should prevail over that of the medical experts who testified for defendants. We are impressed, as was the lower court, by Dr. Maurer's testimony that Zito is totally and permanently disabled and cannot return to his former work, and we conclude that plaintiff is entitled to recover compensation at the maximum rate for a period not beyond 400 weeks.
Counsel for all parties concede that the following compensation has been paid to plaintiff:
September 1, 1943 to December 7, 1943 — 14 wks. @ $9.61 $134.54. December 8, 1943 to February 22, 1944 — 11 wks. @ $20.00 220.00 June 30, 1944 to August 28, 1944 — 8 2/6 wks. @ $20.00 166.66 ________ $521.20.
Therefore, the amount of the credit allowed defendants is incorrect and should be reduced to the sum of $521.20.
[3] Respecting plaintiff's claim for medical expenses, Dr. Maurer testified that his bill for treating Zito up to the date of the trial in the lower court amounted to $250. He testified that Zito made many visits to his office and to us the amount of the bill appears to be reasonable. It is admitted that the defendants have paid $118.35 to their doctors in Zito's behalf, and it is not disputed that the maximum liability of the defendants for medical expenses is $250, as the accident involved in this case occurred prior to the 1944 amendment of Sec. 8 of Act No. 20 of 1914, Act No. 120 of 1944. Accordingly, the plaintiff is entitled to recover the sum of $131.65 for his medical expenses and to that extent the judgment must also be amended.
For the reasons assigned, the judgment appealed from is amended to read as follows:
It is ordered, adjudged and decreed that there be judgment in favor of plaintiff and appellee, James Zito, and against defendants and appellants, Eagle Asbestos Packing Company, Inc., and American Mutual Liability Insurance Company, in solido, for compensation at the rate of $20 per week, for a period not to exceed 400 weeks, commencing August 31, 1943, subject, however, to a credit of $521.20, plus interest on all unpaid installments of compensation at the legal rate from due date until paid, and for the sum of $131.65 for medical expenses incurred by plaintiff and appellee, with legal interest from judicial demand until paid.
It is further ordered, adjudged and decreed that all costs of this proceeding are to be paid by defendants and appellants.
And as thus amended, the judgment appealed from is affirmed.
Amended and affirmed. *Page 281